### Bohanan and others *v.* Giles and others.

*(Circuit Court, D. Nebraska. January 25, 1886.)*

1. Specific Performance—Contract of Ancestor—Consideration—Payment to Executrix—Right of Purchaser.

   When all the right and title of children and their grantees were received from the father of such children, they took such right and title subject to his contracts; and if that father, or his executrix, have received full payment for any land sold by him, they should be required to surrender to such purchaser the legal title.

2. Same — Equity — Protection of Infants cannot Include Injustice to Others.

   Equity will not, even in the interest of minors, be tenacious of technicalities, when thereby gross injustice will result.

In Equity.

*Brown Bros.*, for complainant.

*L. C. Burr* and *J. M. Woolworth*, for defendant.

Brewer, J. The facts in this case are few, and in the main undisputed, and the question a narrow one. In the spring of 1868 Jacob Dawson owned the lot in controversy. He made a written contract with George McKay by which he sold the lot to McKay for $300, to be paid in mason work. Two hundred dollars of this was unquestionably paid during Dawson's life-time. He died July 22, 1869, leaving a will, by which he gave to his wife all his property, real and personal; "the same to be and remain hers, with full power, right, and authority to dispose of the same as to her shall seem meet and proper, so long as she shall remain my widow, upon the express condition that if she shall marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike." The widow became executrix. She subsequently remarried. Possession of the entire lot was given to McKay in 1868. During Dawson's life portions of the lot were deeded by Dawson and wife to parties to whom McKay had sold; the legal title to the rest remaining in Dawson at the time of his death. Subsequently, and on January 3, 1870, Mrs. Dawson

deeded this remainder to McKay. Plaintiffs claim under McKay; defendants, under deeds from Dawson's children.

The question is whether McKay paid the remaining $100 under such circumstances as to satisfy the contract above referred to. He did mason work, amounting to $112, which, after Mr. Dawson's death, was accepted by Mrs. Dawson as done under the contract, and the surplus, $12, paid to him, as well as the deed above mentioned executed. But this work was done in the erection of a house on real estate belonging to Mrs. Dawson. Before Mr. Dawson's death he had planned to build on this real estate, and had arranged with McKay to complete his payment for the lot by work on this building. Probably McKay had already done some of this work at the time of his death, though this is not certain. At any rate, the building was pushed ahead soon after his death, and completed the ensuing fall. Now, from these facts, it may be remarked that McKay paid the full contract price,—paid it in the manner directed by the owner of the lot. The fact that part of the price was paid in work on property not belonging to Dawson is immaterial; for, as the party entitled to receive payment, Dawson could direct where the work should be done. He might have ordered it done on a church, a public building, or on a neighbor's house; the place and the ownership of the property benefited was immaterial; so that if Dawson had lived till McKay had finished this job, he could not have pleaded in defense to an action by McKay for specific performance that part of the work was done on his wife's separate property.

But it may be said that Dawson's death revoked his directions to McKay. Assume that it did, and that there was no one to direct where the work should be done, still McKay's right to pay the balance of the purchase price, and obtain the benefit of his contract by securing title to the lot, was not gone. He could have paid in money, if not in work. And to whom should he have paid? Obviously, the executrix; and if she accepted the payment in work instead of money, who can question the effect of the payment? She and her bond are responsible for any misappropriation of personal effects of the testator. Doubtless, she dealt with McKay, accepted the work, and made the deed in the belief that she was the owner of the property. But will a court of equity permit a party to be deprived of the just results of his acts and labor, through a mere mistake of law respecting the forms of procedure, and the particular authority under which the adverse party assumes to act? All that equity in such a case insists upon is that full payment be made, and made to a party having the right to receive it. All the title or interest the children or their grantees have, they received from their father, and they took it subject to his contracts; and if that father or his executrix have received full payment for any lot sold by him, they should be required to surrender to such purchaser the legal title. It is true, the children were minors at the time of these transactions, and a court of equity takes

special care that the rights of minors are protected. Doubtless it will insist upon compliance with all, even technical, rules and forms, if thereby justice be done; but it will not, even in the interests of minors, be tenacious of technicalities when thereby gross injustic will result.

Let decree be entered for the plaintiffs as prayed for.